1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11   JESSICA HERNANDEZ, et al.,           Case No. 5:21-cv-00166-FLA (SHKx)
12                  Plaintiffs,
                                          **ORDER DENYING PLAINTIFFS'**
13          v.                            **MOTION FOR CLASS**
                                          **CERTIFICATION [DKT. 64]**
14
     WAL-MART ASSOCIATES, INC., et
15   al.,
16                  Defendants.
17
18
19
20
21
22
23
24
25
26
27
28

                                     1

# RULING

Before the court is Plaintiffs Jessica Hernandez and Carol Turner's ("Plaintiffs") Motion for Class Certification ("Motion"). Dkt. 64-1 ("Mot."). Defendant Wal-Mart Associates, Inc. ("Defendant" or "Walmart") opposes the Motion. Dkt. 72 ("Opp'n"). Plaintiffs filed a Reply. Dkt. 84 ("Reply").[1]

On October 24, 2023, the court took the Motion under submission, finding it appropriate for decision without oral argument. Dkt. 87; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons set forth below, the court DENIES the Motion.

# BACKGROUND[2]

Plaintiffs brought this putative class action, on behalf of themselves and similarly situated individuals, alleging Walmart engaged in unfair and unlawful business practices and failed to provide compliant meal breaks, authorize and permit rest breaks, furnish accurate itemized wage statements, pay all wages due, and indemnify employees for necessary expenditures incurred in discharge of their duties. Dkt. 80 ("5AC") ¶ 9.[3] Plaintiffs also seek civil penalties under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698-2699.5. *Id.* ¶¶ 47-51. At all relevant times, Plaintiffs and other class members were employed by Walmart. *Id.* ¶ 9.

In June 2021, Walmart announced a new Connected Associates Program,

---

[1] Plaintiffs subsequently filed a Notice of Errata and corrected Reply on October 5, 2023, to amend certain typographical and calculation errors. Dkt. 86. The court does not rely on any amended portion of the Reply in its analysis.

[2] Plaintiffs filed the operative Fifth Amended Complaint ("5AC") after filing the instant Motion. *See* Dkts. 63, 78, 80. Because the 5AC does not materially add or alter any substantive allegations, or otherwise render the prior operative complaint moot, the court relies here on allegations in the 5AC.

[3] Plaintiffs allege violations of California Labor Code §§ 201, 202, 203, 226, 512, and 2802, and California Business & Professions Code § 17200, *et seq.* 5AC at 6-11.

2

pursuant to which Walmart issued each employee a Samsung cell phone, which could be used for work and personal purposes. Mot. at 8-9; Opp'n at 9-10.[4] Plaintiffs contend the implementation of the Connected Associates Program "created an environment in which it was reasonable for Plaintiffs and other Class Members to incur expenses by using their personal cell phones to (1) download and operate the 'Walmart' and 'Me@Walmart' apps to perform work related tasks…; and (2) receive and respond to cell phone calls and text messages from managers regarding work related matters in the course and scope of store operations." 5AC ¶ 37.[5] Plaintiffs seek indemnification for expenses incurred through employees' usage of personal cell phones for such purposes. *Id.* ¶ 38.

Additionally, Plaintiffs allege Walmart impeded their ability to take timely meal and rest periods by requiring them to complete work tasks prior to taking a break, and "failed to maintain records of the true and actual timekeeping entries … by engaging in a pattern and practice of adjusting the timekeeping entries of Plaintiffs and other Class Members so as to make it appear Plaintiffs and other Class Members received compliant meal periods when in fact they did not." *Id.* ¶¶ 17-19. Plaintiffs' claims for failure to provide accurate wage statements (*id.* ¶ 27) and wages to discharged employees (*id.* ¶¶ 31-34), unfair and unlawful business practices (*id.* ¶¶ 41-45), and civil penalties (*id.* ¶¶ 47-51) are derivative of the failure to provide compliant meal and rest breaks, and indemnification claims.

Plaintiffs originally filed this action in the Los Angeles County Superior Court on November 17, 2020. 5AC ¶ 1. Defendant removed the action to this court on January 28, 2021. *Id.* ¶ 2.

---

[4] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers that appear natively within the documents.

[5] "Me@Walmart" is an application available for download on the Walmart-issued Samsung cell phones if the user so chooses. Opp'n at 10.

# DISCUSSION

## I. Legal Standard

Federal Rule of Civil Procedure 23 ("Rule 23") governs class actions, which are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); Fed. R. Civ. P. 23. District courts have broad discretion to determine whether a class should be certified. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). However, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A moving party must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original).

A party seeking class certification must meet the four pre-requisites under Rule 23(a). *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 979 (9th Cir. 2011); Fed. R. Civ. P. 23(a). Rule 23(a) permits a class action to proceed only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Under Rule 23(a)(2), the moving party must "demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350. "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Instead, the moving party must show that class members' "claims . . . depend upon a common contention . . . [such] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Next, the moving party must also satisfy at least one of the three prongs under Rule 23(b). Fed. R. Civ. P. 23(b)(1)-(3). Plaintiffs here seek certification of the class under Rule 23(b)(3) (Mot. at 14), which allows certification when the court finds that

(1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). While similar to the commonality requirement of Rule 23(a)(2), the predominance requirement of Rule 23(b)(3) is "far more demanding" and requires "a heightened showing that facts and issues common to the class predominate over any individual issues that may be present." *Id.* at 623; *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 457 (C.D. Cal. 2022).

## II. Analysis

Plaintiffs seek to certify a class of "All non-exempt employees of Defendant's Walmart stores in California during the period of November 17, 2016 through the date of class certification." Dkt. 64 at 2. Walmart argues that "because the issues raised by Plaintiffs' expense reimbursement and meal period claims depend on associate-specific facts, rather than evidence common to all [class members], individual fact issues would dominate the trial," and are "not suitable for class treatment." Opp'n at 7-8.[6]

### A.   Cell Phone Reimbursement Claim

California employers are required to indemnify and reimburse an employee for all "necessary expenditures or losses" incurred "in direct consequence of the discharge of his or her duties[.]" Cal. Labor Code § 2802(a) ("Section 2802(a)"). "Necessary expenditures or losses" is defined as "all reasonable costs." *Id.* § 2802(c). "The elements of a [Section 2802(a)] cause of action, as delineated by the statutory

---

[6] Because Plaintiffs' remaining claims for inaccurate wage statements, failure to pay wages, unfair and lawful business practices, and civil penalties under PAGA are derivative of their meal period and/or cell phone reimbursement claims, the court focuses its analysis on the cell phone reimbursement and meal period violation claims.

5

language, are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Nicholas Laboratories, LLC v. Chen*, 199 Cal. App. 4th 1240, 1249 (2011).

Plaintiffs contend the Connected Associates Program "created an environment in which it was reasonable for associates to reach for their personal cell phones to quickly look up products and assist customers and instantly communicate with managers and co-workers about work related matters." Mot. at 19; Reply at 6-7. Accordingly, Plaintiffs seek reimbursement for any costs incurred through such cell phone usage, as Walmart "in effect modeled its Connected Associates Program after how associates had been using their own cell phones for years," and "believed the associates' personal cell phones *were* 'the best tools to do their jobs[.]'" Mot. at 19 (emphasis in original).

Plaintiffs' theory of liability, however, is insufficient to establish commonality or predominance because Walmart's alleged failure to reimburse employees for cell phone usage at work cannot be determined on a class-wide basis, and requires individualized inquiries into the necessity and reasonableness of each class member's cell phone usage. *See* Opp'n at 14. For example, the trier of fact would have to evaluate which class members used the Walmart-issued cell phones during the scope of their employment, and of those individuals, which did so "in direct consequence of the discharge of duties, or of obedience to the directions of the employer." Cal Lab. Code § 2802(a). Determination of whether a communication was a necessary expenditure incurred while discharging one's employment duties requires an individual assessment of the nature and substance of each such communication. *See Dugan v. Ashley Furniture Indus., Inc.*, Case No. 5:16-cv-01125-PA (FFMx), 2016 WL 9173459, at *4 (denying class certification on similar claim for reimbursement of cell phone expenses where, for the purposes of Section 2802(a), "necessity is defined

6

as what was reasonable under the circumstances, which is an inherently fact-specific question") (internal quotations and citations omitted).

Courts in this district have denied class certification on nearly identical claims. *See Carlos v. Wal-Mart Associates, Inc.*, Case No. 5:21-cv-00294-AB (KKx), 2022 WL 17885691, at *6 (C.D. Cal. Sept. 6, 2022) (finding plaintiff did not "demonstrate that [Walmart] directed or expected the putative class members to download or use [the Walmart app] to carry out their employment duties"); *Alvarado v. Wal-Mart Associates, Inc.*, Case No. 2:20-cv-01926-AB (KKx), 2021 WL 6104234, at *8-9 (C.D. Cal. Nov. 3, 2021) ("The fact that Walmart announced it will provide cell phones to its associates does not demonstrate that it is necessary for its current employees to use their personal cell phones to discharge their duties."); *Briggs v. OS Restaurant Services, LLC*, Case No 2:18-cv-08457-JAK (AMFx), 2020 WL 6260001, at *20 (C.D. Cal. Aug. 26, 2020) (denying class certification on claim that defendant-corporation failed to reimburse employees for cost of downloading and using scheduling application because "there [was] not sufficient evidence to support the contention that Defendants had a company-wide policy requiring class members to purchase the [app]," but rather the "evidence demonstrate[d] the class members had the option to download the app"); *Bowen v. Target Corp.*, Case No. 2:16-cv-02587-JGB (MRWx), 2021 WL 4860690 (C.D. Cal. June 24, 2021) (holding that the predominance requirement was not satisfied because "the semi-optional nature" of the defendant's policy at issue was "too much for the predominance inquiry to bear"); *Pavloff v. Cardinal Logistics Management Corp.*, Case No. 5:20-cv-00363-PA (KKx), 2020 WL 6821072, at *9 (C.D. Cal. Oct. 7, 2020) (denying class certification where plaintiffs claimed certain class members handled work communications through their personal phones, but failed to "provide any evidence of a written policy … that clearly required or compelled class members to use their personal cell phones").

As in these cases, Plaintiffs do not establish that Walmart required or compelled associates to use the Walmart-issued cell phones for work purposes, or that Walmart

issued the cell phones as anything other than an optional, alternative means to complete certain work tasks. Absent such evidence, the necessity of utilizing the cell phones for work purposes will vary by individual, and the court would have to conduct an individualized inquiry into each proposed class members' cell phone usage. This is especially so where Walmart has submitted evidence of sworn statements by class members, stating, for example: "I have worked at Walmart for 12 years without owning a personal phone, and I have been able to do my job without a personal cell phone. Not having a personal cell phone has not limited or impacted by abilities to do my job duties at Walmart." Dkt. 74 at 52; *see also* Opp'n at 14-15.

Implementation of the Connected Associates Program alone does not make clear that it was necessary for employees to use their personal phones at work, nor does the fact that, prior to the implementation of the Connected Associates Program, "[u]sing their personal phones was [employees'] only option to call, text, or send pictures among store employees, as adequate alternatives did not exist[.]" Mot. at 10. The optionality of the Walmart-issued phones and availability of alternative communication methods among employees further undermines Plaintiffs' claims that the Walmart-issued phones were the only method by which to conduct their duties. *See* Opp'n 18-19; Dkt. 74 at 74-75 (sworn declaration of employee stating, "For the first 29 years of my employment with Walmart, I did not have a personal smart phone … I was and am fully able to do my job without my personal smart phone … Since I use [the Walmart-issued phone], I rarely use the TC Scanner anymore. However, before I received by [Walmart-issued phone], used [*sic*] the scanner to look up the location of items."); Dkt. 74 at 155 ("During my shifts, I sometimes communicate with my colleagues using my personal cell phone while at work, but it is because I choose to, not because it is necessary or required … I do have other means of reaching my colleagues, such as walking over and talking to them, using the intercom, and/or using a walkie-talkie.").

8

Because Walmart's liability hinges on individualized inquiries as to the purpose of each class member's cell phone usage at work, class certification is improper. The court DENIES the Motion as to Plaintiffs' claim for failure to indemnify employees for necessary expenditures.

### B. Meal Break Claim

Plaintiffs next assert common questions of law and fact predominate the meal break claim because Walmart engaged in a pattern and practice of adjusting timekeeping entries, and failed to ensure associates were not interrupted during their meal breaks. Mot. at 21, 24. With regard to the adjustment of time entries, Plaintiffs contend "Walmart systematically edited employee time entries to reflect full compliance with the [California] Labor Code, despite regular failure to provide proper meal breaks." Mot. at 21. Walmart argues Plaintiffs do not satisfy the commonality or predominance requirements of Rule 23. Opp'n at 23, 25.

Under California law, employers generally must provide employees with one thirty-minute meal period that begins no later than the end of the fifth hour of work and another thirty-minute meal period that begins no later than the end of the tenth hour of work. *Donahue v. AMN Services, LLC*, 11 Cal. 5th 58, 61 (2021). Plaintiffs rely on *Donahue* to argue that the adjusted timecards are presumptively unlawful. Mot. at 23; Reply at 14-15. In *Donahue*, however, the court explained that a rebuttable presumption of liability is triggered when a defendant's time records show a missed, short, or late meal period without proper compensation to the employee. *Donahue*, 11 Cal. 5th at 76. There, the employees' time punches were automatically rounded by the company's timekeeping software, which resulted in meal periods being recorded as longer than they actually were. *Id*. at 62 ("For example, if an employee clocked out for lunch at 11:02 a.m. and clocked in after lunch at 11:25 a.m., [the software] would have recorded the time punches as 11:00 a.m. and 11:30 a.m. Although the actual meal period was 23 minutes, Team Time would have recorded the meal period as 30 minutes.").

9

Here, Plaintiffs fail to establish adequately that the original meal period punches reflect missed, short, late, or otherwise non-compliant meal periods—thus, triggering a presumption of liability under *Donahue*—and argue instead that meal period punches were compliant "only after having been adjusted." Mot. at 21. According to Plaintiffs' expert, Teresa Fulimeni ("Fulimeni"), an "analysis of a 10-percent random sample of Walmart's time records reveals that 915,989 meal break punches (out or in) reflect a compliant meal break only after having been adjusted." *Id.* (citing Dkt. 64-28, "Fulimeni Decl.").

As Walmart notes, however, Fulimeni stated she had not received the "actual pre-edited punch times," and only after receiving such data could she "provide additional analysis," "including determining whether the original meal breaks would have been at least 30 minutes and timely." Fulimeni Decl. ¶ 17. Thus, Plaintiffs assume, without any corroborating evidence, that all original meal period punches were non-compliant, and subject to *Donahue's* presumption of liability. The record does not support such a conclusion.[7]

Nevertheless, even assuming Plaintiffs could establish—or are entitled to an assumption—that the altered punches "*hide* the original punches," and that the original punches may be evidence of meal break violations (Reply at 13), there is no class-wide evidence to demonstrate that all such violations are attributable to

---

[7] Fulimeni also states it is her understanding "from [P]laintiffs' counsel that the pre-edited time data were requested but not provided. As such, we are not able to perform an analysis comparing the pre- and post-edited time data to determine if meal period times were adjusted from non-compliant to compliant." Fulimeni Decl. ¶ 9. Plaintiffs assert they have "requested and diligently followed up to secure the original time punches," but that Walmart has refused to produce such information. Mot. at 23. Accordingly, Plaintiffs claim the edited time entries "support[] a reasonable inference that all of these edited meal breaks were in fact non-compliant." *Id.* at 24. The instant Motion is not an appropriate avenue to seek relief for purported discovery violations, and Plaintiffs do not provide any binding authority supporting the proposition that de facto class certification is an appropriate discovery sanction.

Walmart's failure to provide its employees with statutorily mandated breaks. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1017 (2012) ("[W]e conclude an employer's obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work is done."). Plaintiffs have not offered evidence establishing conclusively that the meal break violations at issue were the result of Walmart's unlawful actions, rather than other factors, such as an employee's decision not to take a meal break. *See Sultan v. Medtronic, Inc.*, 2:11-cv-04132-MWF (PLAx), 2012 WL 3042212, at *2 (C.D. Cal. July 23, 2012) ("The reasons that employees fail to take breaks can be manifold: the employees could have forgotten, wanted to finish assignments, were not hungry, did not want to leave the premises, wanted to leave early or, possibly, were manipulating their timecards."). Notably, certain class members attested to never taking an untimely meal period (*see* Dkt. 74 at 36, 155), and that "Walmart has a program that automatically locks the register before the fifth hour of work hits. This makes it impossible for me to take my lunch break past my fifth hour of work." *Id.* at 155. Thus, liability on this issue, and not merely damages, will need to be determined on an individualized basis as to whether, in each instance, the statutorily required opportunity for a break was provided and, if not, why the period was late or missed. *See Sultan*, 2012 WL 3042212, at *3 (denying certification on commonality and predominance grounds as to similar missed meal periods claim for the same reasons).

      Plaintiffs' sole argument regarding interruption of meal periods—that 59 class members submitted sworn declarations "showing that Walmart failed to ensure a work environment where the class members would take their meal breaks without being interrupted" (*e.g.*, Dkt. 74 at 3, 19, 31)—fails for the same reasons, where other class members have submitted declarations stating they never experienced an interrupted meal period while working at Walmart. *See Cole v. CRST, Inc.*, 317 F.R.D. 141, 145-46 (C.D. Cal. Apr. 1, 2016) ("As Plaintiff cannot show that Defendant had a policy of

11

preventing [employees] from taking meal and rest breaks, and because there is evidence in the record of [employees] taking meal and rest breaks without interference from Defendant, individualized inquiries predominate.").

Accordingly, the court declines to grant class certification on this ground.[8]

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' Motion.

IT IS SO ORDERED.

Dated: March 28, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[8] Because Plaintiffs' class claims for inaccurate wage statements, failure to pay wages, unfair competition, and civil penalties under PAGA are all derivative of their meal period and/or unreimbursed business expense claims, class certification fails as to these claims as well.