# EXHIBIT E

Exhibit E, Page 000068

# SETTLEMENT AGREEMENT

## 1. PREAMBLE

1.1    IT IS HEREBY STIPULATED AND AGREED by and between Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Defendant" or "Walmart"), on the one hand, and Plaintiff James S. Evans ("Plaintiff" or "Evans"), on behalf of himself and the "Settlement Class" (as defined herein), subject to the approval fo the Court, that the settlement of the lawsuit entitled *James S. Evans v. Wal-Mart Stores, Inc.*, Case No. 2:17-cv-07641-AB-KK (the "Lawsuit") shall be effectuated and subject to the following terms and conditions:

## 2. DEFINITIONS

2.1    "Agreement" or "Settlement Agreement" means this Settlement Agreement between the Parties.

2.2    "Amended Complaint" means the operative First Amended Complaint, which was filed on November 20, 2017, ECF 12.

2.3    "Applicable Pay Periods" means, as reflected in Walmart's records any pay periods each Settlement Class Member worked for Walmart at a Walmart Retail Location in California during the Settlement Class Period. Any pay period during which the Settlement Class Member worked at a Walmart Retail Location in California any amount of time in a non-exempt position (e.g., when not on a leave of absence) will be counted as an Applicable Pay Period.

2.4    Attorneys' Fees and Litigation Expenses" means the Attorneys' Fees and Litigation Expenses to be requested by Settlement Class Counsel, subject to Court approval in accordance with Section 5.2.1 of this Agreement.

2.5    "CAFA Notice" means the notice to be made in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715

2.6    "Class Settlement Amount" means the amount of money that Walmart is obligated to pay pursuant to this Settlement, which shall consist of a total payment of Thirty-Five Million Dollars ($35,000,000), as described more fully in Section 5.1 of this Agreement.

2.7    "Complaint" means the original Complaint, which was filed in the Superior Court for Los Angeles County, California on September 13, 2017 and which was subsequently removed by Walmart to this Court, ECF 1-1.

Exhibit E, Page 000069

2.8    "Court" means the District Court and any appellate court that may review any orders entered by the District Court related to this Settlement.

2.9    "Defendant" means Wal-Mart Stores, Inc., k/n/a Walmart Inc.

2.10    "District Court" means the United States District Court for the Central District of California.

2.11    "Execution" means the signing of this Agreement by all signatories hereto.

2.12    "Final Judgment and Final Approval Order" refers to the Final Judgment and Final Approval Order approving the Settlement and dismissing the Lawsuit with prejudice as against Defendant, substantially in the form attached hereto as **Exhibit C**, which this Settlement contemplates will be entered and approved by the Court

2.13    "Individual Settlement Amount" means the final gross amount to be sent and paid to each Individual Class Member in accordance with this Agreement.

2.14    "Lawsuit" means the instant action, Case No. 2:17-cv-07641-AB-KK.

2.15    "Long Form Notice" means the notice substantially in the form of **Exhibit B** which shall be posted on the Settlement Administrator website.

2.16    "LWDA" means the California Labor Workforce and Development Agency.

2.17    "Net Settlement Amount" means that portion of the Class Settlement Amount remaining after the subtraction of: (a) Attorneys' Fees and Litigation Expenses approved and awarded by the Court; (b) the Settlement Class Representative Payment approved and awarded by the Court; (c) Notice and Administration Costs approved by the Court; (d) the PAGA Payment Amount approved by the Court; and (e) any other fees or expenses incurred in connection with this Settlement as approved by the Court (including, without limitation, taxes on interest, if any, earned by the QSF, but excluding the costs for Walmart to send CAFA Notice).

2.18    "Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit, substantially in the forms attached here to as **Exhibit A** (Postcard Notice) and **Exhibit B** (Long Form Notice), consistent with the notice process as described in Section 6 of this Agreement.

2.19   "Notice and Administration Costs" means the costs approved by the Court for the Settlement Administrator to send Notice, administer the Settlement, and to perform all other reasonable duties contemplated by this Agreement and as approved or directed by the Court.

2.20   "Notice Date" means the date on which the Notice is first mailed to Settlement Class Members.

2.21   "Notice Period" means the period of time in which a Settlement Class Member may submit a Request to Opt Out or object to the Settlement.

2.22   "PAGA Payment Amount" means the amount, subject to Court approval, to be paid from the Class Settlement Amount to the LWDA for its share of PAGA penalties in accordance with this Agreement.

2.23   "Parties" means the Settlement Class Representative and Walmart.

2.24   "Plaintiff" means James S. Evans.

2.25   "Preliminary Approval Order" means the District Court's order granting preliminary approval of this Settlement.

2.26   "Postcard Notice" means the postcard substantially in the form of **Exhibit A** that shall be mailed to Settlement Class Members.

2.27   "QSF" means the Qualified Settlement Fund to be established by the Settlement Administrator in accordance with this Agreement.

2.28   "Released Claims" means the claims, rights, demands, charges, complaints, causes of action, obligations, damages, penalties, debts, costs and expenses (other than those costs and expenses required to be paid pursuant to this Settlement Agreement), liens, or liabilities of any and every kind that are released, acquitted, and forever discharged pursuant to Section 12 of this Agreement.

2.29   "Releasees" means Defendant Wal-Mart Stores, Inc., k/n/a Walmart Inc., and each of its current and former subsidiaries, parent corporations, affiliates, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, employers, attorneys, personal representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees,

Exhibit E, Page 000071

and fiduciaries, as well as the personal representatives or executors of any such persons.

2.30 "Releasing Settlement Class Members" means the Settlement Class Representative and all Settlement Class Members, other than those who submit timely and valid Requests to Opt Out.

2.31 "Request to Opt Out" means the request to opt out of this Settlement that may be sent by any Settlement Class Member who does not wish to remain in the Settlement Class, in accordance with Section 8 of this Agreement.

2.32 "Settlement" means the compromise and settlement of the Lawsuit as contemplated by this Settlement Agreement.

2.33 "Settlement Administrator" means Phoenix Settlement Administrators, the entity that, subject to Court approval, shall perform the duties of, among other things: (i) establishing a QSF; (ii) preparing, printing and disseminating the Notice to the Settlement Class Members in accordance with the Notice Plan; (iii) tracking returned Notices and Requests to Opt Out; (iv) ascertaining current address and addressee information for each Notice returned as undeliverable, and re-mailing the Notice where appropriate; (v) determining and finalizing the calculations the Net Settlement Amount and the Individual Settlement Amounts; (vi) notifying Walmart's Counsel and Settlement Class Counsel regarding submitted Requests to Opt Out and/or Objections; (vii) mailing the settlement checks to Settlement Class Members; (viii) referring to Settlement Class Counsel and, where appropriate, also to Walmart's Counsel, all inquiries by Settlement Class Members that the Settlement Administrator cannot resolve and/or that involve matters not within the Settlement Administrator's duties specified herein; (ix) responding to inquiries of Settlement Class Counsel or Walmart's Counsel; (x) promptly apprising Walmart's Counsel and Settlement Class Counsel of the activities of the Settlement Administrator; (xi) establishing a web site to provide Settlement Class Members with information about this Agreement; and (xii) other notice and administration duties in accordance with this Agreement and the District Court's orders.

2.34 "Settlement Class" means the settlement class to be certified for settlement purposes in accordance with Section 4 of this Agreement. The Settlement Class consists of all Walmart associates who worked in a non-exempt position at a Walmart Retail Location in California during the Settlement Class Period. Excluded from the class are the Judge assigned to the case and any of his or her relatives.

Exhibit E, Page 000072

2.35   "Settlement Class Counsel" means the following counsel:

Shaun Setareh, Esq.                                Stanley D. Saltzman, Esq.
William M. Pao, Esq.                               MARLIN & SALTZMAN, LLP
SETAREH LAW GROUP                                  29800 Agoura Road, Suite 210
9665 Wilshire Boulevard, Suite 430                 Agoura Hills, California 91301
Beverly Hills, California 90212                     (818) 991-8080
(310) 888-7771

2.36   "Settlement Class List" means the listing of Settlement Class Members and Applicable Pay Period information to be provided by Walmart in accordance with Section 7.1 of this Agreement.

2.37   "Settlement Class Period" means the period of time from September 13, 2016 through the date of preliminary approval, or some other end date to be agreed to by the Parties.

2.38   "Settlement Class Representative" means James S. Evans, the named Plaintiff in the Lawsuit and the person Settlement Class Counsel shall request be appointed by the District Court as the Settlement Class Representative for purposes of the Settlement Class.  James S. Evans is also a member of the Settlement Class.

2.39   "Settlement Class Representative Payment" means the enhancement award to be requested by Settlement Class Counsel for payment to the Settlement Class Representative, subject to Court approval in accordance with the terms of this Agreement.

2.40   "Settlement Effective Date" means the first day following the later of the occurrences identified in Section 2.40.1 and 2.40.2:

    2.40.1 The date on which the time to appeal or seek permission to appeal or seek other judicial review of the entry of the Final Judgment and Final Approval Order approving the Settlement and dismissing this Lawsuit with prejudice as to Defendant has expired with no appeal or without other judicial review having been taken or sought; or

    2.40.2 If an appeal or other judicial review has been taken or sought from the entry of the Final Judgment and Order of Dismissal, the latest of:

        (i) the date the Final Judgment and Final Approval Order is finally affirmed by an appellate court with no possibility of

5

subsequent appeal or other judicial review therefrom;

(ii) the date the appeal(s) or other judicial review therefrom are finally dismissed with no possibility of subsequent appeal or other judicial review; or

(iii) if remanded to the District Court or to a lower appellate court following an appeal or other review, the date, after the Final Judgment and Final Approval Order has been entered by the District Court after remand, upon which the time to appeal or seek permission to appeal or seek other judicial review of the entry of that Final Judgment and Final Approval Order has expired with no further appeal or other judicial review having been taken or sought. If further appeal is sought after a remand, the time periods in this Sub-Section shall apply.

2.34.3    The provisions and deadlines set forth in this Section shall apply even if there are no objections to the Settlement.

2.41    "Walmart" means Defendant Wal-Mart Stores, Inc. k/n/a Walmart Inc

2.42    "Walmart's Counsel" means Naomi Beer, Robert J. Herrington and Timothy J. Long of Greenberg Traurig, LLP.

2.43    "Walmart Retail Location" means a Walmart Store, Supercenter or Neighborhood Market.

## 3. RECITALS

3.1    On September 13, 2017, Plaintiff James S. Evans filed a wage and hour putative class action entitled *James S. Evans v. Wal-Mart Stores, Inc.* in the Superior Court of the State of California, County of Los Angeles, Case No. BC675587, in which Plaintiff alleged five violations of the California Labor Code, including, among other provisions, alleged violations of California Labor Code Section 226, and the Unfair Competition Law. On October 18, 2017, Walmart removed the action to the District Court. Plaintiff filed the operative First Amended Complaint on November 20, 2017, which alleged six violations of the California Labor Code, including, among other provisions, California Labor Code Section 226, violation of the Unfair Competition Law, and a PAGA representative claim. (Dkt. 12.) With respect to the claim that Walmart violated Section 226 of the California Labor Code, Plaintiff plead numerous alleged violations, including, among other theories, the

Exhibit E, Page 000074

alleged failure to provide the opportunity to receive a paper wage statement. Plaintiff contends that the alleged failure to provide the opportunity to provide a paper wage statement is "tantamount to not providing any wage statement at all" and, as such, subsumes every conceivable theory of how Section 226 of the California Labor Code could have been violated. (Dkt. 194, Plaintiff's Memorandum of Contentions of Facts and Law at 5:8-10.)

3.2     Walmart denied and continues to deny all of Plaintiff's material allegations including, but not limited to, those made in the Complaint and the First Amended Complaint.

3.3     This Lawsuit has been heavily litigated for nearly four years, including exchange of written, document and deposition discovery and expert information, briefing and argument on motions for class certification, decertification and summary judgment and other pre-trial and trial preparation.

3.4     On December 7, 2020, the Parties participated in a private mediation with mediator Michelle Yoshida, Esq. of Phillips ADR and were unable to reach an agreement. The Parties continued to litigate the Lawsuit for four more months, including to prepare for an April 30, 2021 Final Pretrial Conference and a June 15, 2021 trial date. The Parties resumed negotiations a few days prior to the Final Pretrial Conference, and as a result of those negotiations, the Parties reached an agreement to resolve the Lawsuit as set forth in this Agreement.

3.5     The Settlement Class Representative and Settlement Class Counsel believe that the claims of the Settlement Class Members are meritorious. Settlement Class Counsel represent that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the Plaintiff and the Settlement Class Members' claims against Walmart, including, but not limited to: (i) reviewing and analyzing relevant documents, including policy documents and data produced by Walmart; (ii) researching the applicable substantive and procedural law and Walmart's potential defenses; (iii) conducting and defending depositions, including 30(b)(6) and expert depositions; (iv) interviewing, hiring and consulting with an expert; (v) interviewing several Walmart associates; (vi) advocating for the rights of the 200,000+ Settlement Class Members; (vii) briefing motion for class certification; (viii) obtaining approval for a notice plan and agreeing to retain and pay for the services of Phoenix Class Action Administration Solutions to implement the Court approved notice program following the District Court's grant of class certification; (ix) defending against Walmart's motions for partial summary judgment and to decertify the class; (x) attending a full-day mediation with an experienced and respected mediator and conducting additional follow up settlement

Exhibit E, Page 000075

discussions after the mediation; and (xi) preparing for the Final Pretrial Conference and trial. Based on their own independent investigation and evaluation, Settlement Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and that the Settlement is in the best interests of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Walmart, trial risk, and appellate risk.

3.6     Walmart denies liability or wrongdoing of any kind associated with the claims alleged and maintains that the claims are not appropriate for class-wide treatment under Rule 23 and that the Lawsuit is unmanageable as a class action or as a PAGA representative action. Walmart further asserts that it has complied with all applicable provisions of federal or state statutory and common law. Walmart also asserts that, even if the Court were to find it liable in this Lawsuit, Plaintiff will be unable to prove entitlement to damages or PAGA penalties. Walmart continues to adhere to all defenses and objections it raised throughout this Lawsuit.

3.7     The entry of the Final Judgment and Order of Dismissal in this Case shall dismiss the Lawsuit with prejudice. The Parties agree to cooperate and take all steps necessary and appropriate to obtain approval of this Settlement, to effectuate its terms, and, to the extent of the obligations set forth herein, to dismiss this Lawsuit against with prejudice.

3.8     Each of these Recitals is incorporated into this Agreement as if fully set forth herein.

## 4. CERTIFICATION OF SETTLEMENT CLASS

4.1     In order to implement the Settlement, Settlement Class Counsel shall request that the District Court certify the Settlement Class described in Section 2.33 of this Agreement pursuant to Federal Rule of Civil Procedure 23. The proposed Court order shall expressly provide that the Parties and Settlement Class Counsel agree that the certification of the Settlement Class is for settlement purposes in this Lawsuit only and for no other purpose.

4.2     Parties agree that if for any reason the District Court does not grant final approval of the Settlement, or if final approval is not granted following the appeal of any order by the District Court, or if for any reason the Settlement Effective Date does not occur, the certification of the Settlement Class for settlement purposes shall be deemed null, void, and unenforceable, and the provisions of Section 17 shall apply.

Exhibit E, Page 000076

## 5.  MONETARY TERMS OF SETTLEMENT

5.1    Subject to the other terms and conditions of this Agreement and subject to Court approval, Walmart agrees to pay the Class Settlement Amount of $35,000,000.  Other than with respect to CAFA notice as provided in Section 7 of this Agreement, this Class Settlement Amount is the maximum amount payable by Walmart under this Settlement and is inclusive of (i) Attorneys' Fees and Litigation Expenses awarded by the Court; (ii) Settlement Class Representative Payment approved by the Court; (iii) Notice and Administration Costs approved by the Court; (iv) the PAGA Payment Amount approved by the Court; (v) all payments to Settlement Class Members; and (vi) any other fees or expenses incurred in executing the terms of this Agreement as approved by the Court.  Under no circumstances shall the amount to be paid by Walmart exceed the Class Settlement Amount.

5.2    The Class Settlement Amount shall be allocated as follows:

5.2.1 Attorneys' Fees and Litigation Expenses: Settlement Class Counsel will be entitled to request that, subject to Court approval, Settlement Class Counsel be awarded reasonable Attorneys' Fees and Litigation Expenses to be paid from the Class Settlement Amount.  Walmart takes no position on the amounts to be sought by Settlement Class Counsel for an award of Attorneys' Fees and Litigation Expenses, but does not object to a reasonable award for Attorneys' Fees and Litigation Expenses by the Court consistent with this Agreement.  This Settlement is not contingent on the award of Attorneys' Fees and Litigation Expenses, and  in the event that the Court does not approve the Attorneys' Fees and Litigation Expenses in the amount requested by Settlement Class Counsel, or in the event that the Court awards Attorneys' Fees and Litigation Expenses in an amount that is less than the amount requested by Settlement Class Counsel, any amounts not approved shall become part of the Net Settlement Amount for distribution to Settlement Class Members. Nothing in this Section or Agreement limits the rights of Settlement Class Counsel to appeal any decision by the Court regarding Attorneys' Fees and Litigation Expenses.

5.2.2 Settlement Class Representative Payment: Settlement Class Counsel will be entitled to request that, subject to Court approval, the Settlement Class Representative, James Evans, be paid a

Exhibit E, Page 000077

Settlement Class Representative Payment to compensate him for his services as a class representative to be paid from the Class Settlement Amount. The Settlement Class Representative Payment shall be in addition to any amount the Settlement Class Representative is entitled to receive under the Settlement. Walmart takes no position on the amount sought by Settlement Class Counsel as a Settlement Class Representative Award. This Settlement is not contingent on the approval of the Settlement Class Representative Payment, and in the event that the Court does not approve the requested Settlement Class Representative Payment, or in the event that the Court awards a Settlement Class Representative Payment in an amount that is less than the amount requested by Settlement Class Counsel, any amount not approved shall become part of the Net Settlement Amount for distribution to Settlement Class Members.

5.2.3   Notice and Administration Costs: All Notice and Administration Costs payable to the Settlement Administrator for providing notice and conducting other settlement administration duties as set forth in this Agreement shall be paid from the Class Settlement Amount. The Settlement Administrator shall provide an estimate for the Notice and Administration costs, which shall be submitted for Court approval as part of the Motion for Preliminary Approval. The Parties agree that the actual Notice and Administration Cost shall not exceed that Court-approved figure unless the Court approves a request for additional Notice and Administration Costs. In the event that the actual Notice and Administration Costs are less than this estimate, any remaining Notice and Administration Costs shall be redistributed to Settlement Class Members, or if doing so is not feasible, Settlement Class Counsel and Walmart Counsel shall meet and confer as to options for the balance and shall submit a proposal for approval by the Court (though none of these remaining funds shall revert to Walmart).

5.2.4   PAGA Payment Amount: Subject to Court approval, the PAGA Payment Amount shall be $375,000.00 which represents seventy-five percent (75%) of the total amount allocated of $500,000.00, payable to the LWDA for its share of PAGA penalties.

Exhibit E, Page 000078

5.2.5  Net Settlement Amount: The Net Settlement Amount shall be the amount remaining from the Class Settlement Amount after subtracting (i) the Attorneys' Fees and Litigation Expenses awarded by the Court; (ii) the Settlement Class Representative Payment awarded to the Settlement Class Representative by the Court; (iii) all Notice and Administration Costs approved by the Court; (iv) the PAGA Payment Amount approved by the Court; and (v) and any other fees or expenses incurred in connection with this settlement as approved by the Court (including, without limitation, taxes on interest, if any, earned by the QSF but excluding the costs of sending CAFA notice to be borne by Walmart as set forth in Section 7 of this Agreement). The Net Settlement Amount will be distributed as Individual Settlement Amounts to those Settlement Class Members who do not submit a timely Request to Opt Out. The Individual Settlement Amount for each such Settlement Class Member will be determined based on his or her proportional share of the Net Settlement Amount based on the total number of Applicable Pay Periods worked by each Settlement Class Member during the Settlement Class Period, provided, however, that Settlement Class Members who, according to Walmart's records, who were furnished all of their wage statements as a detachable part of a paper check shall be allocated a proportionally lower amount than Settlement Class Members who were not furnished all of their wage statements as a detachable part of a paper check. With respect to determining the number of pay periods allocated to each Settlement Class Member, Walmart's records of Applicable Pay Periods shall control.

5.3  Each recipient of any monies paid in accordance with this Agreement is responsible for any taxes associated with the monies received by that recipient. The Settlement Class Representative, on behalf of himself and the Settlement Class Members, acknowledges and agrees that he has not relied upon any advice from Walmart or Settlement Class Counsel as to the taxability of the payments received pursuant to this Settlement Agreement. The QSF shall be responsible for issuing appropriate tax forms, if any, to Settlement Class Members.

# 6. NOTICE TO THE SETTLEMENT CLASS MEMBERS

6.1    The Settlement Administrator shall provide notice of the Settlement to Settlement Class Members as follows:

6.1.1  Within thirty (30) calendar days of the date on which the District Court enters an order granting preliminary approval of the Settlement, or on another date set by the Court, Walmart shall provide the Settlement Administrator with the Settlement Class List in the form of an Excel chart listing the names, last known addresses and telephone numbers of the Settlement Class Members, as that information exists in Walmart's records. On request of the Settlement Administrator, Walmart will separately provide Social Security Numbers to the Settlement Administrator only to the extent needed for purposes of notice and administration, such as to locate updated addresses for Notices that are returned as undeliverable and to process settlement payments to Settlement Class Members.

6.1.2  Within twenty (20) calendar days of the date on which the Settlement Administrator receives the Settlement Class List from Walmart, or on another date set by the Court (the "Notice Date"), using the data provided by Walmart in the Settlement Class List, the Settlement Administrator will send the Postcard Notice to each Settlement Class Member. Prior to mailing the Postcard Notice, the Settlement Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database and shall mail the Postcard Notice to any updated address obtained therefrom.

6.1.3  The Notice Period for all Settlement Class Members shall be forty-five (45) days from the Notice Date.

6.1.4  If any Postcard Notice is returned as undeliverable, the Settlement Administrator shall promptly attempt to locate such Settlement Class Member through an electronic search using the Social Security number and/or former address of that person and shall promptly mail an additional Postcard Notice to each such person.

6.1.5  Notice shall be sent by way of a postcard that will contain an URL to a web site to be established and maintained by the Settlement Administrator that will provide information regarding the Settlement including copies of a Long Form Notice and other information about the Settlement. The Postcard Notice shall include basic information including a summary of the settlement,

12

a description of who is a class member, identifying Class Counsel, and instructions on how to proceed substantially in the form attached as **Exhibit A**. The Long Form Notice shall contain additional details regarding the Settlement and shall be substantially in the form attached as **Exhibit B**.

## 7. CLASS ACTION FAIRNESS ACT NOTICE

7.1    Walmart shall provide CAFA Notice regarding this Settlement to the appropriate governmental authorities in accordance with the Class Action Fairness Act ("CAFA"). Walmart shall pay for the cost of providing the CAFA Notice separate from and in addition to the Class Settlement Amount.

## 8. OPT-OUT PROCESS

8.1    A Settlement Class Member who wishes to exclude herself or himself from this Settlement and from the release of claims pursuant to this Settlement shall submit a timely and valid Request to Opt Out. To be timely, the Parties will propose to the District Court that the Request to Opt Out must be filed with the Settlement Administrator within forty-five (45) days after the Notice Date. To be valid, the Request to Opt Out shall (1) contain the words "I wish to be excluded from the Settlement Class in James Evans v. Walmart" or similar language; (2) contain the Settlement Class Member's name and other information to confirm employment at Walmart and other requirements for membership in the Settlement Class and (3) be signed and dated.

8.2    A Settlement Class Member who submits a timely Request to Opt Out is not eligible to recover a share of the Net Settlement Amount. The Settlement Administrator shall maintain a list of persons who have sent Requests to Opt Out and shall provide such list to Walmart's Counsel and Settlement Class Counsel upon request. The Settlement Administrator shall retain the originals of all Requests to Opt Out (including the envelopes with the postmarks) received from Settlement Class Members and shall provide copies of all Requests to Opt Out to Walmart's Counsel and Settlement Class Counsel within three (3) business days of receipt. Walmart retains the right to assert any and all defenses to the claims of persons who opt out from this Settlement. If required by the Court, Settlement Class Counsel shall file the Requests to Opt Out with the Court in advance of or in conjunction with the motion for final approval of the Settlement (or at another date set by the District Court), with any sensitive personal information redacted.

## 9. OBJECTION PROCESS

Exhibit E, Page 000081

9.1    A Settlement Class Member who wishes to object to the Settlement must timely submit to the Settlement Administrator or the Court a valid objection, in writing, on or before forty-five (45) days after the Notice Date.  To be considered timely, the objection must be postmarked or otherwise received by the Settlement Administrator or the Court on or before the deadline. To be considered valid, the Parties will propose to the District Court that an objection must (1) be from a Settlement Class Member, (2) be in writing and contain the words "I object to the Settlement in James Evans v. Walmart," or similar language (3) include the objector's name, address, and other information necessary to confirm employment at Walmart and other requirements for membership in the Settlement Class, and (4) be signed and dated. The Parties will propose to the District Court that the objection must state the basis for the objection, including why the objector believes the Settlement is not in the best interests of the Settlement Class Members, along with any and all documents that support the objection. The objection must also state whether or not the objector intends to appear at the final approval hearing. Additional instructions regarding how to object to the Settlement shall be contained in the Notice. A Settlement Class Member who submits a Request to Opt Out is not eligible to object to the Settlement.

9.2    The Settlement Administrator shall maintain a list of persons who have filed objections and shall provide such list to Walmart's Counsel and/or Settlement Class Counsel upon request. To the extent that Objections are sent to the Settlement Administrator, the Settlement Administrator shall retain the originals of all objections (including the envelopes with the postmarks) received from Settlement Class Members, and shall provide copies of all objections to Walmart's Counsel and Settlement Class Counsel within three (3) business days of receipt. Settlement Class Counsel shall file the Objections with the Court in advance of or in conjunction with the motion for final approval of the Settlement (or at another date set by the District Court), with any sensitive personal information redacted.

9.3    Subject to the approval of the Court, Settlement Class Members who do not file and serve timely and valid written objections in accordance with the procedures set forth in this Agreement and the Notice shall be deemed to have waived any objections to the Settlement and shall forever be foreclosed from making any objection (whether by appeal or otherwise) to any aspect of the Settlement, including, without limitation, the fairness, reasonableness, or adequacy of the proposed Settlement or the Court's award of Attorneys' Fees and Litigation Expenses and a Settlement Class Representative Payment.

Exhibit E, Page 000082

## 10. FUNDING AND DISTRIBUTION PROCESS

10.1   The Class Settlement Amount shall be funded through a QSF in accordance with this Agreement. The timing of the payments by Walmart to the QSF are as follows:

> 10.1.1 Within twenty (20) business days following the District Court's grant of preliminary approval, or within twenty (20) business days following receipt by Walmart of the information needed to transfer funds to the QSF (including wire transfer instructions and W9 for the QSF), whichever is later, Walmart shall transfer the Notice and Administration Costs to the QSF. In the event that the Settlement Effective Date does not occur, any amounts not actually used by the Settlement Administrator for Notice and Administration Costs shall be refunded to Walmart.

> 10.1.2 Within twenty (20) business days following the Settlement Effective Date, Walmart shall transfer the balance of the Class Settlement Amount to the QSF.

10.2   The Settlement Administrator will distribute the money in the QSF by making the following payments:

> 10.2.1 Paying the amount awarded by the Court for Attorneys' Fees and Litigation Expenses within three (3) business days after the receipt of the funds transferred to the QSF by Walmart pursuant to Section 10.1.2.

> 10.2.2 Paying the amount awarded by the Court for the Settlement Class Representative Payment to the Settlement Class Representative within three (3) business days after the receipt of the funds transferred to the QSF by Walmart pursuant to Section 10.1.2.

> 10.2.3 Paying the amount awarded by the Court for the PAGA Penalty Payment to the LWDA within three (3) business days after the receipt of funds transferred to the QSF by Walmart pursuant to Section 10.1.2.

10.2.4 Paying the Individual Settlement Amounts from the from the Net Settlement Amount to Settlement Class Members within thirty (30) days of the funds transferred to the QSF by Walmart pursuant to Section 10.1.2.

10.3   Settlement Class Members will have ninety days (90) days from the date the settlement checks are mailed to cash their settlement checks. Thirty (30) days prior to the close of the one-hundred and eighty (90) day period, the Settlement Administrator will send a reminder postcard to those Settlement Class Members who have not cashed their settlement checks.

10.4   At the expiration of the period for redeeming final payments as set forth in Section 10.3, the Settlement Administrator shall advise Walmart's Counsel and Settlement Class Counsel what amount, if any, remains in the QSF.   Unless otherwise provided by law, any uncashed settlement checks shall be delivered to the California State Controller's Office pursuant to the California Unclaimed Property Law in the name of the Settlement Class Member.

## 11. QUALIFIED SETTLEMENT FUND

11.1   As required under this Agreement, Walmart shall transfer the Class Settlement Amount to a fund, account or trust constituting a Qualified Settlement Fund ("QSF"), to be held as a separate trust as described in Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-l. The Settlement Administrator, in coordination with Settlement Class Counsel and Walmart, shall take such steps as shall be necessary to create and qualify the QSF under §468B of the Internal Revenue Code, 26 U.S.C. §468B, and the regulations promulgated pursuant thereto. Walmart shall be considered the "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(l). The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1 .468B-2(k)(3). The Parties shall cooperate in securing an order of the Court to establish the QSF in accordance with the terms hereof in conjunction with its preliminary approval of the Settlement and Notice as described in this Agreement. The Court shall retain jurisdiction over the administration of the QSF. Walmart shall supply to the Settlement Administrator and to the Internal Revenue Service the statement described in Treasury Regulation § 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Walmart makes a transfer to the QSF. It is intended that the transfers to the QSF will satisfy the "all events test" and the "economic performance" requirement of § 461(h)(l) of the Internal Revenue Code, and Treasury Regulation § 1.461-l(a)(2). Accordingly, Walmart shall not include the income of the QSF in its

Exhibit E, Page 000084

income. Rather, the QSF shall be taxed on its modified gross income, excluding the sums transferred to it, and shall make payment of resulting taxes from its own funds. In computing the QSF's modified gross income, deductions shall be allowed for its administrative costs and other deductible expenses incurred in connection with the operation of the QSF, including, without limitation, state and local taxes and legal, accounting, and other fees relating to the operation of the QSF.

11.2   Upon establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation § 1 .468B-2(k)(4)

11.3   If requested by either Walmart or the Settlement Administrator, the Settlement Administrator, the QSF, and Walmart shall fully cooperate in filing a relation-back election under Treasury Regulation § 1.468B-1(U)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

11.4   Following its deposits as described in Section 10 of this Agreement, and other than as specifically set forth herein, Walmart shall have no financial obligation or liability whatsoever with respect to the notifications to the Class required hereunder, the processing of Claims and Opt-Out Letters, the allowance or disallowance of claims by Claimants, payments to Settlement Class Counsel, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and other taxes imposed on the QSF or its disbursements, or payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposits shall fully discharge Walmart's obligations to Claimants and Settlement Class Counsel and for expenses of administration in respect to the disposition of the Class Settlement Amount hereunder. Rather, the Settlement Administrator, with oversight by Settlement Class Counsel, shall have sole authority and responsibility for the administration of such funds and income thereon, disbursement to Claimants and Settlement Class Counsel, and payment of taxes and administrative costs in accordance with the provisions hereof, subject only to the rights of Walmart or Settlement Class Counsel to seek redress for any breach of the terms hereof.

11.5   The Settlement Administrator shall cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns and tax withholdings statements in accordance with the provisions of Treasury Regulation §1.468B-2(k)(l) and Treasury Regulation §1.468B-2(1)(2)(ii). The Settlement Administrator may, at the expense of the QSF, and with the approval of Settlement Class Counsel, retain legal counsel and an independent, certified public accountant

Exhibit E, Page 000085

to consult with and advise the Settlement Administrator or the QSF with respect to the preparation and filing of such materials and the federal, state and local tax compliance of the QSF. Either Walmart independently or the Settlement Administrator (with the approval of Settlement Class Counsel), independently or jointly, may, but are not required to, apply to the Internal Revenue Service and/or any applicable state taxing authority for an advance ruling as to any issue pertinent to the qualification of the QSF under Internal Revenue Code § 468B and Treasury Regulations promulgated thereunder, its tax status under applicable state law, and/or its tax payment, reporting, and withholding duties, so long as Walmart and the remaining Parties are reasonably satisfied that such application and ruling will not compromise the confidentiality of settlement evidenced herein as required by this Agreement. Subject to any contrary holdings in any such ruling, Settlement Class Members shall be responsible for payment of appropriate federal, state, and local income taxes on any claim paid out pursuant to this Agreement. The Parties agree that no portion of any distributions from the QSF to the Settlement Class Members is made in satisfaction of any excluded liability as described in Treasury Regulation § 1.468B-1(g) related to Qualified Settlement Funds.

11.6   The taxable year of the QSF shall be the calendar year in accordance with Treasury Regulation §1.468B-2(i). The QSF shall utilize the accrual method of accounting within the meaning of § 446(c) of the Internal Revenue Code.

11.7   Based on the Settlement Administrator's recommendation and with the approval by Walmart and Settlement Class Counsel, the QSF may be invested in United States Treasury bills, money market funds primarily invested in the same, or certificates of deposit (CDs), provided that such portions of the QSF as may reasonably be required to pay current QSF administrative expenses, taxes or disbursements to Claimants or Settlement Class Counsel may be deposited in bank accounts which are federally insured to the greatest extent practicable. All federal, state, and local taxes imposed with respect to income earned by, or property of, the QSF, shall be paid from the QSF.

11.8   With the approval of Walmart and Settlement Class Counsel, the Settlement Administrator may amend, either in whole or in part, any administrative provision of this Section or the trust instrument through which the QSF is established to maintain the qualification of the QSF pursuant to the above-described authorities provided that the rights and liabilities of the Parties hereto and the Class are not altered thereby in any material respect.

Exhibit E, Page 000086

## 12. COMPREHENSIVE WAIVER, RELEASE, AND DISMISSAL

12.1    Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, all Releasing Settlement Class Members do hereby irrevocably release, acquit, and forever discharge all of the Releasees of and from any and all actual or potential claims, rights, demands, charges, complaints, causes of action, obligations, damages, penalties, debts, costs and expenses (other than those payments, costs, and expenses required to be paid pursuant to this Agreement), liens, or liabilities of any and every kind, that reasonably arise out of the same set of operative facts plead in the Complaint or First Amended Complaint in the Lawsuit, or that are reasonably related to the allegations in the Complaint or First Amended Complaint in the Lawsuit, with respect to  claims that Walmart violated Section 226 of the Labor Code, whether known or unknown, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local and whether for damages, wages, penalties or injunctive or any other kind of relief ("the Released Claims").

12.2    Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, and in addition to the release given as a Settlement Class Member, Plaintiff for himself and Plaintiff's representatives, heirs, executors, administrators, successors and assigns, fully, finally, and forever releases and discharges the Releasees from all claims, demands, actions, causes of action, suits, damages, penalties, losses, and expenses, of any and every nature whatsoever, known or unknown, as a result of actions or omissions by Releasees, including, without limitation claims for unpaid wages, unlawful discrimination, harassment, or failure to accommodate and any other claims related to the terms and conditions of employment including under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Fair Labor Standards Act, the National Labor Relations Act, the California Fair Employment and Housing Act, the California Wage and Hour Laws and the California Private Attorneys' General Act and any amendments to the foregoing, or any other federal, state or local statute, rule, ordinance, or regulation, as well as any claims in equity or under common law for tort, contract or wrongful discharge, provided, however, that nothing in this Relesae is intended to be a waiver by Plaintiff of claims Plaintiff may have against the Releasees (a) for unemployment or workers' compensation benefits, (b) for vested rights under ERISA-covered employee benefit plans as applicable on the date Plaintiff signs this Agreement,  or (c) claims that cannot be released by private agreement. Plaintiff understands that subject to the foregoing this is otherwise a full

19

and final release covering all unknown and unanticipated injuries, debts, claims or damages which may have arisen, or may arise, in connection with any act or omission by Releasees, prior to the date of execution of the Agreement.

12.3    The Parties agree that this Settlement Agreement shall not be used as a defense in any manner in the matter of *Magadia v. Wal-Mart Associates, Inc. et al.*, United States District Court, Northern District of California Case No. 5:17-cv-00062-LHK

12.4    The Parties acknowledge that this Settlement, including the releases provided in this Section, reflects a compromise of disputed claims.

12.5    As part of the motion for final approval, Settlement Class Counsel shall request that the Court enter Final Judgment and Final Approval Order, which shall dismiss the Lawsuit with prejudice, and release the Released Claims as described above, with the exception of any claims that might be retained by Settlement Class Members who exclude themselves from the Settlement, if any. Walmart shall retain any existing defenses to such excluded claims. The Parties agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement, to effectuate its terms, and, to the extent of the obligations set forth in this Agreement, to dismiss this Lawsuit with prejudice. The form of Final Judgment and Final Approval Order agreed to by the Parties, subject to Court approval, is attached as **Exhibit C**.

## 13. DUTIES OF THE PARTIES WITH RESPECT TO OBTAINING PRELIMINARY COURT APPROVAL OF THE SETTLEMENT

13.1    Settlement Class Counsel shall file this Agreement with the District Court as part of the motion for preliminary approval and shall apply to the District Court for the entry of an order granting preliminary approval of the Settlement Agreement substantially in the following form:

13.1.1 Granting preliminary approval to the Settlement Agreement;

13.1.2 Approving as to form and content the proposed Notices and Notice Plan;

13.1.3 Scheduling a final fairness hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Settlement Class Members, to be held no

Exhibit E, Page 000088

sooner than 90 days after the date of the Preliminary Approval Order;

13.1.4 Appointing Shaun Setareh, Esq, and William M. Pao, Esq of Setareh Law Group and Stan Saltzman of Marlin & Saltzman, LLP as Settlement Class Counsel;

13.1.5 Approving James S. Evans as the Settlement Class Representative;

13.1.6 Approving Phoenix Settlement Administrator as the Settlement Administrator;

13.1.7 Approving the QSF; and

13.1.8 Setting dates for each of the following: (a) a deadline by which Settlement Class Members must object to the Settlement; (b) a deadline by which Settlement Class Members must Request to Opt Out of the Settlement; (c) a deadline to file motion for final approval of the Settlement, Settlement Class Counsel's motion for an award of Attorneys' Fees and Litigation Expenses and any Settlement Class Representative Payment, and (d) a date for the final fairness hearing.

13.2 Walmart shall cooperate with Settlement Class Counsel as necessary to obtain preliminary approval.

13.3 The Parties shall continue to take any steps necessary to stay any pending proceedings so as to preserve the status quo in the event that the Settlement Effective Date does not occur.

## 14. DUTIES OF THE PARTIES FOLLOWING PRELIMINARY COURT APPROVAL

14.1 Following preliminary approval by the District Court of the Settlement, and no later than forty-five (45) days prior to the final fairness hearing or on another date set by the Court, Settlement Class Counsel will submit a motion for final approval, which shall include a proposed Final Judgment and Final Approval Order substantially in the form attached hereto as **Exhibit C**. The proposed Final Judgment and Final Approval Order shall:

Exhibit E, Page 000089

14.1.1 Grant final approval to the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

14.1.2 Determine Settlement Class Counsel's application for Attorneys' Fees and Litigation Expenses;

14.1.3 Decide any Settlement Class Representative Payment to the Settlement Class Representative;

14.1.4 Dismiss this Lawsuit as between the Releasing Settlement Class Members on the one hand, and Walmart on the other hand, with prejudice, and permanently bar the Releasing Settlement Class Members from further prosecuting any of the Released Claims, subject to the Court's continuing jurisdiction.

14.1.5 Provide that the District Court shall retain continuing jurisdiction over this action with regard to (a) implementation of this Settlement Agreement, (b) disposition of the QSF, and (c) enforcement and administration of this Settlement Agreement.

14.2 Walmart shall cooperate with Settlement Class Counsel as necessary to obtain final approval and the dismissal of the Lawsuit.

## 15. MUTUAL FULL COOPERATION

15.1 The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to execution of all necessary documents, and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court or otherwise, to effectuate the terms of this Settlement. As soon as practicable after execution of this Settlement, Settlement Class Counsel shall, with the assistance and cooperation of Walmart and its counsel, take all necessary steps to secure the Court's Final Judgment.

## 16. STATEMENT OF NO ADMISSION

16.1 Nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, or wrongdoing on the part of Walmart. Walmart further denies liability for any alleged wrongdoing, expressly denies liability for the

Exhibit E, Page 000090

claims asserted, and denies and does not admit any of the pleaded facts not admitted in the Lawsuit. Walmart further disagrees that a class in this Lawsuit is appropriate or authorized under law, other than for purposes of effectuating this Settlement. Nor shall this Agreement constitute an admission by Walmart as to any interpretation of laws or as to the merits, validity, or accuracy of any claims made against it in the Lawsuit. Likewise, nothing in this Agreement shall be construed or deemed an admission by Plaintiff or the Settlement Class with regards to the validity of any of Walmart's defenses or affirmative defenses. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

16.2    The Parties further agree that this Agreement and all of its Exhibits, any Opt Out Requests or Objections, the Court's actions (including Court orders) related to this Settlement, and all other statements, discussions, negotiations, actions, documents or items (including argument of counsel) undertaken by anyone relating to this Settlement are settlement communications or documents and, as such, they: (a) do not constitute, are not intended to constitute, and will not be deemed to constitute an admission by Defendant  as to any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity; and (b) shall not be admissible in evidence and shall not be used for any purpose in this Lawsuit or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, or any other litigation against Defendant for any purpose, including as evidence of any admission by Defendant of any liability with respect to any claim for damages or other relief, or of the appropriateness of class certification or any element thereof, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement, including the Release.

## 17. VOIDING THE AGREEMENT

17.1    Except with respect to the provisions of Section 17.2, in the event that this Settlement is not finally approved, or if for any reason the Settlement Effective Date does not occur, the Settlement and this Agreement shall be deemed null, void, and unenforceable and each Party shall retain all of its respective rights as they existed as of the date notice of the Settlement was first provided to the Court, and neither this Agreement, nor any of its accompanying Exhibits or any orders entered by the Court in connection with this Agreement, shall be admissible or used for any purpose in any subsequent proceedings in this Lawsuit or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including any workers' compensation  action. Provided, however, Walmart shall not be reimbursed for any monies reasonably spent by the Settlement

Exhibit E, Page 000091

Administrator, or reasonably owed to the Settlement Administrator but not yet paid, for Notice and Administration Costs.

17.2   In the event that the Court does not approve the Attorneys' Fees and Litigation Expenses or the Settlement Class Representative Payment in the amount requested by Settlement Class Counsel, or in the event that the Attorneys' Fees and Litigation Expenses or Settlement Class Representative Payment requested by Settlement Class Counsel is reduced or the Court modifies any of the deadlines or other dates set forth in this Agreement, such findings or orders shall not be a basis for rendering the entire Settlement Agreement null, void, or unenforceable. Settlement Class Counsel retain their right to appeal any decision or order by the Court regarding the Attorneys' Fees and Litigation Expenses.

## 18. SIGNATORIES' AUTHORITY

18.1   The respective signatories to this Agreement each represent that they are fully authorized to enter into this Settlement on behalf of the respective Parties for submission to the Court for preliminary and final approval.

## 19. NO PRIOR ASSIGNMENTS

19.1   The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

## 20. NOTICES

20.1   Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given:  (i) on the date given, if given by hand delivery; (ii) within one (1) business day, if sent by overnight delivery services such as Federal Express or similar courier; (iii) on the third business day after mailing by United States registered or certified mail, return receipt requested, or (iv) on the day received for delivery  by e-mail. All notices given under this Agreement shall be addressed as follows:

Exhibit E, Page 000092